

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

FILED
11 MAR 21   AM 10: 57
CLERK, U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA, FLORIDA

UNITED STATES OF AMERICA *ex. rel.*
PENELOPE THOMAS AND CATHIA
GAVIN,

    Plaintiffs,

v.

SARASOTA PAIN ASSOCIATES, P.A.
AND STEVEN Y. CHUN, M.D.,

    Defendants.

FILED UNDER SEAL
PURSUANT TO 31 U.S.C. §3730

C.A. No.: 8:11-CV-583-T-23TBM

FILED/Docketed
3/9/12
Date                                Time
CLERK, U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA, FLORIDA

## COMPLAINT FOR DAMAGES AND OTHER RELIEF UNDER THE *QUI TAM* PROVISIONS OF THE FALSE CLAIMS ACT

Plaintiff-Relators Penelope Thomas, R.N. and Cathia Gavin, R.N. ("Relators" or "Plaintiffs") bring this action, on behalf of the United States of America and the state of Florida, against Defendants Steven Y. Chun, M.D. and Sarasota Pain Associates, P.A. ("Defendants") to recover monies that Defendants wrongfully obtained from federal healthcare programs through false or fraudulent claims for payment. For its causes of action, Plaintiffs allege as follows:

### NATURE OF ACTION

1. This case arises under the federal False Claims Act, 31 U.S.C. §§ 3729-3733 (the "FCA") and Florida False Claims Act, Fla. Stat. Ann. § 68.081 *et seq.*

2. Relators bring this action to recover losses from false claims submitted to the United States and the State of Florida as a result of the sustained fraudulent conduct of Defendants.



1

3. Relators also bring this action to recover statutory damages and civil penalties under the FCA.

4. Finally, Relators also bring this action to recover all available damages and other monetary relief under the common law or equitable theories of unjust enrichment and payment by mistake of fact.

5. Relators allege that Defendants submitted false or fraudulent claims for payment to federal healthcare programs for services that were not performed and medications that were not delivered. Relators believe, and therefore allege, that such misconduct has been occurring for more than four years, and continues to occur presently.

6. Under the False Claims Act, a private person may, under certain circumstances, bring an action in federal district court for himself/herself and for the United States, and may share in any recovery. 31 U.S.C. § 3730(b). That private person is known as a relator, and the action that the relator brings is called a *qui tam* action.

## JURISDICTION

7. This Court has subject matter jurisdiction to entertain this action under 28 U.S.C. §§ 1331 and 1345, and 31 U.S.C. § 3732. The Court possesses supplemental jurisdiction to entertain the common law and equitable causes of action pursuant to 28 U.S.C. § 1367(a) and 31 U.S.C. § 3732(b).

8. The Court has personal jurisdiction over defendant pursuant to 31 U.S.C. § 3732(a), because Defendants are transacting, and have transacted, business in this District, and because Defendants committed acts within this District that violated 31 U.S.C. § 3729.

9. Under the FCA, this Complaint is to be filed *in camera*, remain under seal for a period of at least sixty (60) days and shall not be served on the Defendants until the Court so orders. 31 U.S.C. § 3730. The government may elect to intervene and proceed with the action within sixty (60) days after it receives both the Complaint and the material evidence and information. 31 U.S.C. § 3730.

## VENUE

10. The United States District Court for the Middle District of Florida is the proper venue for this dispute under 29 U.S.C. § 1391(b), since a substantial part of the events and omissions giving rise to the claims occurred in this judicial district.

## PARTIES

11. Plaintiff-Relator Penelope Thomas, R.N. is an adult individual who was employed by Defendants as a Registered Nurse from May 2006 through January 2010. In this capacity, Plaintiff-Relator Thomas worked as an office RN, assisting the physician and physician assistant with day-to-day operations of the practice.

12. Plaintiff-Relator Cathia Gavin, R.N. is an adult individual who was employed by Defendants as a Registered Nurse from May 2006 through 2010. In this capacity, Plaintiff-Relator Gavin worked as an office RN, assisting the physician and physician assistant with day-to-day operations of the practice.

13. Defendant Sarasota Pain Associates, P.A. ("SPA") is a Florida corporation, located at 6310 Health Park Way, Suite 320, Bradenton, Florida, and is a provided of health care services. A large percentage of SPA's revenue is derived form treating patients with back pain. Many of SPA's patients are elderly person who

participate in the Medicare program and low-income earners and other persons who participate in the Medicaid program.

14. Typically, SPA bills its clients for two, separate categories of healthcare services provided by physicians: (a) a primary medical procedure, and (b) anesthetic case associated with the primary medical procedure.

15. Defendant Steven Y. Chun, M.D. is the owner of Defendant Sarasota Pain Associates, P.A. and a physician licensed by the State of Florida, specializing in pain management. Typically, Dr. Chun is the primary treating physician for patients of SPA and, as such, performs the primary medical procedure.

## THE FALSE CLAIMS ACT

16. At the time relevant to this suit, the FCA provided, in pertinent part, that

> (a) Any person who (1) knowingly presents, or causes to be presented, to an officer or employee of the United States Government or a member of the Armed Forces of the United States a false or fraudulent claim for payment or approval; (2) knowingly makes, uses or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government; (3) conspires to defraud the Government by getting a false or fraudulent claim allowed or paid;
> . . .
> * * *
> is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages which the Government sustains because of the act of that person . . . ..
> (b) For purposes of this section, the terms "knowing" and "knowingly" mean that a person, with respect to information . . . (1) has actual knowledge of the information; (2) acts in deliberate ignorance of the truth or falsity of the information; or (3) acts in reckless disregard of the truth or falsity of the information, and no proof of specific intent to defraud is required.

31 U.S.C. § 3729.

## FLORIDA ACT

17. The Florida False Claims Act provides, in relevant part:

4

> The purpose of the Florida False Claims Act is to deter persons from knowingly causing or assisting in causing state government to pay claims that are false, and to provide remedies for obtaining treble damages and civil penalties for state government when money is obtained from state government by reason of a false claim.

Fla. Stat. Ann. § 68.081(2).

18. The Florida statute provides liability for any person who

> (a) Knowingly presents or causes to be presented to an officer or employee of an agency a false claim for payment or approval;
> (b) Knowingly makes, uses, or causes to be made or used a false record or statement to get a false or fraudulent claim paid or approved by an agency;
> (c) Conspires to submit a false claim to an agency or to deceive an agency for the purpose of getting a false or fraudulent claim allowed or paid; . . .

Fla. Stat. Ann. § 68.082(2).

## FEDERAL HEALTHCARE PROGRAMS

19. Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395 - 1395ggg (1999), establishes the Health Insurance for the Aged and Disabled Program, popularly known as the Medicare Program. The Secretary of HHS administers the Medicare program through CMS, a component of HHS.

20. At all relevant times to this Complaint, the Medicate Program was a federally-funded and administered program intended to assist elderly and disabled persons in paying for the cost of health care.

21. The Medicare program is comprised of four parts -- Medicare Part A, B, C and D – and works by reimbursing health care providers for the costs of service and ancillary items at fixed rates. .

22. The United States provides reimbursement for Medicare claims out of the Medicare Trust Fund. The Medicare Trust Fund is supposed to reimburse healthcare

providers, such as SPA, only for those services that were actually performed and were medically necessary for the health of the patient and that were ordered specifically by a physician, using appropriate medical judgment and acting in the best interest of the patient. The Medicare Trust Fund relies on the implied representations of the suppliers of Medicare services, reimbursable in whole or in part under Medicare, that the services billed by the providers were medically necessary for the patient and were actually performed as billed and compensable by Medicare. Medicare required that the services had to be physically performed and billed according to Medicare policies and procedures codes.

23. The federal Medicare regulation excludes from payment services that are not reasonable and necessary. 42 C.F.R. § 411.15(k)(1)

24. CMS oversees the Medicare program. Regional intermediaries acting for Medicare set the compensation rates for services by assigning a specific amount of money to each five-digit Medicare code (the "CPT Code"), which code identified with particularity the nature of the service performed.

25. In order to bill the Medicare Program, a provider must submit an electronic or hard-copy claim form called CMS 1500. When the CMS 1500 is submitted, the provider certifies that the services in question were "medically indicated and necessary for the health of the patient."

26. On a CMS 1500, the provider also must state, among other things, the procedure(s) for which it is billing Medicare using the CPT Code.

27. All healthcare providers, including offices such as SPA, must comply with applicable statutes, regulations and guidelines in order to be reimbursed by Medicare. A

6

provider has a duty to have knowledge of the statutes, regulations and guidelines regarding coverage for the Medicare services.

## THE MEDICAID PROGRAM

28. At all times relevant to this Complaint, the Medicaid Program was intended to assist poor person and other qualified people in paying for the cost of healthcare. Medicaid was a federal-state matching program, in which both the federal and state governments were required to contribute a specified percentage of total expenditures.

29. Medicaid is administered by the individual states.

30. The Social Security Act and federal regulations establish minimum levels of coverage that states must provide in order to operate a Medicaid program. Federal law and regulations also established optional coverage categories, all or party of which states may choose to cover. Each state covered the required services and eligibility groups, but developed a unique program by determining which optional services and eligibility groups to cover.

31. While states are responsible for the hands-on operation of Medicaid, the federal government played an active oversight role. CMS oversaw the Medicaid Program and federal Medicaid regulations required each state to designate a single state agency responsible for the Medicaid Program. In Florida, the Agency for Health Care Administration ("AHCA") is the single state agency responsible for the Medicaid Program.

32. The Medicaid Program in Florida works by reimbursing healthcare providers for the cost of services and ancillary items at fixed rates and in a manner similar to that used in the Medicare Program.

## WORKERS' COMPENSATION PROGRAMS

33. The federal and the Florida Workers Compensation programs are government funded programs which provide payment to medical care providers for treatment of injuries received while on the job.

34. Defendants received payment under the federal and the Florida Workers Compensation programs.

## TRICARE

35. TRICARE is a federally funded medical insurance program for military personnel, retirees, their spouses and unmarried dependent children under the age of 22, administered by TRICARE Management Activity, pursuant to 10 U.S.C. §§ 1071-1107. TRICARE was established by Title 10, U.S.C. Chapter 55 (formerly known as CHAMPUS) and operates in accordance with policies and procedures set forth in Department of Defense TRICARE regulation 6010.8-R, 32 C.F.R Part 199.

36. TRICARE prohibits improper billing practices such as unbundling and/or manipulating CPT Codes as a means to increase reimbursement. 32 C.F.R. § 199.9(c). Such practices are considered fraudulent and abusive and a misrepresentation of services. 32 C.F.R. §§ 199.9(c)(5) – (c)(8).

37. Any physician providing services and asking TRICARE for reimbursement has an obligation to submit claims for non-covered costs or non-chargeable services disguised as covered. 32 C.F.R. § 199.9(c)(2). The physician has a

8

further obligation not to submit claims that are fictitious, or include or are supported by any written statement that asserts as material fact that is false or fictitious, or include or are supported by any written statement that omits a material fact that the provider had a duty to include and the claims is false or fictitious as a result of such omissions. 32 C.F.R § 199.2.

38. Defendants received payment under the TRICARE program.

### DEFENDANTS' FALSE CLAIMS SCHEMES

39. At all times relevant to this Complaint, Defendants sought reimbursement from the Medicare, Medicaid and Workers' Compensation programs, and knew of the policies, procedures and criteria for obtaining reimbursement under these programs. They knowingly violated such policies, procedures and criteria in order to fraudulently obtain greater reimbursement payments than they were entitled to receive.

40. Beginning as early as 2006, up to and including the date of the filing of this Complaint, Defendants have willfully or with at least reckless disregard or reckless indifference to the truth engaged in several billing schemes designed to defraud the Medicare, Medicaid and Workers' Compensation programs (the "Programs") by the submission of knowingly false claims to the Programs.

41. At all times relevant to this Complaint, Defendants sought reimbursement from the Programs and knew of the policies, procedures and criteria for obtaining lawful reimbursement under the Programs' regulations. Defendants knowingly violated such policies, procedures and criteria to obtain greater reimbursement payments than they were entitled to receive.

42. Beginning as early as 2006, up to and including the date of the filing of this Complaint, Defendants engaged in several widespread billing schemes intended to defraud the Programs

43. One method used by Defendants to perpetrate their scheme was billing for services that were not performed.

44. Another method used by Defendants was the "upcoding" of service billing. "Upcoding" means assigning, and billing for Medicare and Medicaid CPT Codes that represent more expensive procedures than the procedures actually performed.

45. Specific examples of some of Defendants' false and fraudulent schemes are set forth below.

A.  **Fraudulent Scheme Involving CPT Code 62318**

46. Defendants routinely submitted claims seeking reimbursement for performing a bolus under the CPT Code 62318, when, in fact, the procedure was never performed.

47. A bolus is the administration of a medication, drug or other compound that is given to raise its concentration in blood. The administration can be given intravenously, by intramuscular, intrathecal or subcutaneous injection.

48. CPT code 62318 describes a continuous infusion or intermittent bolus, including catheter placement of diagnostic or therapeutic nonneurolytic substance(s).

49. CPT code 62318 also includes the setup and start of the infusion.

50. Defendants frequently billed for a bolus injection which was not provided.

51. Because Relators were the nurses charged with treating various patients, they can verify whether the patient did, or did not, receive the bolus injection.

10

52. For example, a review of a patient's Progress Notes shows a point where the nurse's entry from the treatment ends. However, in many cases Defendant Dr. Chun would revise the Progress Notes to add treatment that did not occur.

## B. Fraudulent Scheme Involving CPT Code 95991

53. Defendants frequently submitted claims seeking reimbursement under CPT Code 95991.

54. CPT Code 95991 is described as the refilling and maintenance of implantable pump or reservoir for drug delivery, via spinal (intrathecal, epidural) or brain (intraventriular). However, to use CPT Code 95991, the procedure must be performed by a physician.

55. CPT Code 95990 bills for the same procedure, but can be performed by a RN.

56. Typically, at Defendants' offices, RNs performed this task (refilling and maintenance) for virtually every patient.

57. Defendants improperly submitted claims under CPT Code 95991, which was reimbursable at a higher rate than the charge for CPT Code 95990.

58. Upon information and belief, the current Medicare reimbursement payment in Florida for CPT Code 95991 is $104.55.

59. Upon information and belief, the current Medicare reimbursement payment in Florida for CPT Code 95990 is $74.29.

60. The foregoing is a form of upcoding. It also constitutes billing for services not actually rendered.

11

C. **Fraudulent Scheme Involving CPT Code 99215**

61. Healthcare providers are entitled to reimbursement for office visits by established patients. The amount of reimbursement depends on the extensiveness of the level of care provided. Medicaid regulations state that providers are to rate the level of care on a scale of one to five, with five being the highest. (This scale is sometimes referred to as "evaluation and management" code, or "E/M".)

62. Defendants routinely submitted claims seeking reimbursement for extensive level of care for patients (at levels four or five), when, in fact, the actual level of care provided was less extensive, or non-existent.

63. CPT Code 99215 represents a very high-level of care. It is described as an office or other outpatient visit for the evaluation and management of an established patient, which requires at least 2 of 3 key components (comprehensive history, comprehensive exam, or high-complexity medical decisions). The average time for a visit utilizing CPT Code 99215 is 35-40 minutes.

64. Dr. Chun routinely instructed the RNs to make entries stating that Dr. Chun performed a comprehensive E/M examination, even when he did not. This would permit Dr. Chun to bill using Code 99215.

65. Upon information and belief, the current Medicare reimbursement payment in Florida for CPT Code 99215 is $139.16.

66. Upon information and belief, Defendants bill, and, for years has billed, for a full examination, whether or not anyone actually conducted a full examination on the patient, and such conduct continues.

67. The foregoing is a form of upcoding. It also constitutes billing for services not actually rendered.

## COUNT 1
## VIOLATION OF THE FALSE CLAIMS ACT
(False Claims Act: Presentation of False Claims)
(31 U.S.C. § 3729(a)(1))

68. Plaintiff-Relators repeat and reallege paragraphs 1 through ___, as if fully set forth herein.

69. Defendants knowingly presented or caused to be presented to the United States false or fraudulent claims for payment or approval in violation of the False Claims Act, 31 U.S.C. § 3729(a)(1).

70. By virtue of the false or fraudulent claims made by the Defendants, the United States suffered damages and therefore is entitled to statutory damages under the False Claims Act, to be determined at trial, plus a civil penalty for each violation.

71. Pursuant to the False Claims Act, Defendants are liable to the United States for treble damages and civil penalties for each of the false or fraudulent claims herein.

## COUNT 2
## VIOLATION OF THE FALSE CLAIMS ACT
(False Claims Act: Making or Using False Record or Statement)
(31 U.S.C. § 3729 (a)(2))

72. Plaintiff-Relators repeat and reallege paragraphs 1 through ___, as if fully set forth herein.

73. Defendants knowingly made, used, or caused to be made or used, false records or false statements to get false or fraudulent claims paid or approved by the United States.

74. By virtue of the false records or false statements made by the Defendants, the United States suffered damages and therefore is entitled to statutory damages under the False Claims Act, to be determined at trial, plus a civil penalty for each violation

## COUNT 3
## UNJUST ENRICHMENT

75. Plaintiff-Relators repeat and reallege paragraphs 1 through ___, as if fully set forth herein.

76. This is a claim for the recovery of monies by which Defendants have been unjustly enriched.

77. Defendants have been unjustly enriched with federal monies which they should not in good conscience be permitted to retain.

78. By directly or indirectly obtaining federal funds to which they were not entitled, Defendants were unjustly enriched, and are liable to account and pay such amounts, or the proceeds therefrom, which are to be determined at trial, to the United States.

## COUNT 4
## VIOLATION OF THE FLORIDA FALSE CLAIMS ACT
(Presentation of False Claims/Making or Using False Record or Statement)
(Fla. Stat. Ann. § 68.081 *et seq.*)

79. Plaintiff-Relators repeat and reallege paragraphs 1 through ___, as if fully set forth herein

80. This is a claim for treble damages and civil penalties under the Florida False Claims Act, Fla. Stat. Ann. § 68.081 *et seq.*

81. The Florida False Claims Act provides liability for any person who

>  (a) Knowingly presents or causes to be presented to an officer or employee of an agency a false claim for payment or approval;

> (b) Knowingly makes, uses, or causes to be made or used a false record or statement to get a false or fraudulent claim paid or approved by an agency;
> (c) Conspires to submit a false claim to an agency or to deceive an agency for the purpose of getting a false or fraudulent claim allowed or paid; . . .

Fla. Stat. Ann. § 68.082(2).

82. As a result, Defendants violated Fla. Stat. § 68.082 of the Florida False Claim Act and caused the State of Florida to suffer actual damages.

83. Defendants knew that these claims for payment were false or fraudulent, or were deliberately ignorant of the truth or falsity of said claims, or acted in reckless disregard of whether said claims were true or false.

84. Defendants knowingly made, used or caused to be made or used, false records or statements to get false or fraudulent claims paid or approved by State of Florida.

85. The Florida government, unaware of the falsity of the records and claims caused to be made by Defendants, pay, and continue to pay, claims that would not have been paid but for the acts and/or conduct of Defendants as alleged herein.

86. By reason of Defendants' acts, the State of Florida has been damaged, and continues to be damaged, in a substantial amount to be determined at trial.

### PRAYER FOR RELIEF

WHEREFORE, the United States demands and prays that judgment be entered in its favor against defendant as follows:

1. Counts 1 and 2 under the False Claims Act, as amended, for the amount of statutory damages, and such civil penalties as are required by law, together with all such further relief as may be just and proper.

2.  Count 3 for unjust enrichment, for the damages sustained and/or amounts by which the defendant was unjustly enriched or by which defendant retained illegally obtained monies, plus interest, costs, and expenses, and all such further relief as may be just and proper.

3.  Count 4 under the Florida False Claims Act for the amount of statutory damages, and such civil penalties as are required by law, together with all such further relief as may be just and proper.

Dated: March 17, 2011

Respectfully submitted,

_____
Stephen A. Sheller, Esquire
Brian J. McCormick, Jr., Esquire
**SHELLER, P.C.**
1528 Walnut Street, Floor 3
Philadelphia, PA 19102
Tel.: (215) 790-7300
Fax: (215) 546-0942
sasheller@sheller.com
bjmccormick@sheller.com

Mary Ann Floyd, Esquire
Fla. Bar No. 0115746
**DIEZ & FLOYD, P.A.**
737 South Indiana Avenue
Englewood, FL 34223
(941) 474-5506 phone
(941) 474-5507 facsimile
diezandfloyd@verizon.net

Attorneys for Relators Penelope Thomas and Cathia Gavin

**Of Counsel**
Joseph A. Trautwein, Esquire
**JOSEPH A. TRAUTWEIN & ASSOCIATES**
1777 Sentry Parkway West
Abington Hall, Suite 100
Blue Bell, PA 19422-2210

16

## CERTIFICATE OF SERVICE

I hereby certify that on this 17th day of March 2011, I caused a copy of the foregoing Motion to Seal to be served by Federal Express upon:

The Honorable Eric Holder
Attorney General of the United States
United States Department of Justice
950 Pennsylvania Ave., NW
Washington, DC 20530-0001

Robert E. O'Neill
United States Attorney
400 N. Tampa Street, Suite 3200
Tampa, Florida 33602

David Lewis
Medicaid Fraud Control Unit of Florida
Office of the Attorney General
107 West Gaines Street
PL-01, The Capitol
Tallahassee, FL 32399-1050

_____
BRIAN J. MCCORMICK, JR.