UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA *ex rel.*
PENELOPE THOMAS and CATHIA
GAVIN,

Plaintiffs,                                                    Case No. 8:11-cv-583-T-23TBM

v.

SARASOTA PAIN ASSOCIATES, P.A.
and STEVEN Y. CHUN, M.D.,

Defendants.

## UNITED STATES' COMPLAINT IN INTERVENTION

The United States of America brings this action against Sarasota Pain

Associates, P.A. ("Sarasota Pain") and Steven Y. Chun, M.D. ("Chun") under the False

Claims Act ("FCA"), 31 U.S.C. §§ 3729-33, and the common law to recover damages

from false claims that Sarasota Pain and Chun (collectively "Defendants") presented to

the Medicare program.  Chun is a medical doctor who owns and operates Sarasota

Pain, specializing in pain management.  Defendants' false claims arise from fraudulent

billing practices that led to the submission of false claims during the period from in or

about January 2006 through at least in or about January 2010, including claims for

payment for: (1) refills of implantable infusion pumps as if performed by a physician,

when they were performed by a nurse; (2) patient evaluation and management services

that were not rendered; (3) patient evaluation and management services billed at a

higher level of service than actually rendered; and (4) injections that were not rendered.

By knowingly presenting these false claims for payment, Defendants violated the FCA, were paid by mistake, and were unjustly enriched.

## I.      NATURE OF ACTION

1.      The United States brings this action to recover treble damages and civil penalties under the FCA and the common law theories of payment by mistake of fact and unjust enrichment.

2.      During the period from in or about January 2006 through at least in or about January 2010, Defendants knowingly presented, and knowingly caused to be presented, false and fraudulent claims to the United States for payment and approval from Medicare.  These false claims resulted in payment to Defendants of hundreds of thousands of dollars of reimbursement that would not have been paid but for Defendants' misconduct.

## II.     JURISDICTION AND VENUE

3.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1345, and 1367(a).

4.      This Court may exercise personal jurisdiction over Defendants pursuant to 31 U.S.C. § 3732(a) and because Defendants reside and transact business in the Middle District of Florida.

5.      Venue is proper in the Middle District of Florida under 31 U.S.C. § 3732 and 28 U.S.C. § 1391(b) and (c) because Defendants reside and transact business in this District.

2

### III.    PARTIES

6.    The United States brings this action on behalf of the Department of Health and Human Services ("HHS") and the Centers for Medicare & Medicaid Services ("CMS"), which administers the Medicare program, 42 U.S.C. §§ 1395 *et seq.* ("Medicare").

7.    Plaintiffs-Relators Penelope Thomas, R.N., and Cathia Gavin, R.N., are individuals residing in Florida.  Both formerly worked for Chun and Sarasota Pain as registered nurses.

8.    On or about March 21, 2011, Thomas and Gavin filed an action alleging violations of the FCA on behalf of themselves and the United States pursuant to the *qui tam* provisions of the FCA, 31 U.S.C. § 3730(b)(1).

9.    Defendant Sarasota Pain Associates, P.A. is a Florida corporation, located at 6310 Health Park Way, Suite 320, Bradenton, Florida.  Sarasota Pain moved to its Bradenton location in 2008, after first operating in Sarasota.  Sarasota Pain specializes in pain management services, including the implantation of infusion pumps that dispense pain medication over extended periods of time and the refilling of those pumps.

10.    Defendant Steven Y. Chun, M.D., is the owner of Sarasota Pain and a physician licensed by the State of Florida.  Since in or about June 2006, Chun has been the sole practicing physician at Sarasota Pain.  Chun and Sarasota Pain are health care providers who participate in the Medicare program and submit claims for reimbursement from the Medicare trust fund.

## IV.   THE FALSE CLAIMS ACT

11.   The FCA provides for the award of treble damages and civil penalties for,

*inter alia*, knowingly presenting or causing the presentment of false or fraudulent claims

to the United States for payment or approval.  31 U.S.C. § 3729(a)(1)(A).

12.   The FCA provides, in pertinent part, that a person who:

> (a)(1)(A) knowingly presents, or causes to be presented, a false or
> fraudulent claim for payment or approval; . . .
> is liable to the United States Government for a civil penalty of not less than
> $5,000 and not more than $10,000, as adjusted by the Federal Civil
> Penalties Inflation Adjustment Act of 1990 (20 U.S.C. 2461 note; Public
> Law 104-410), plus 3 times the amount of damages which the
> Government sustains because of the act of that person.

31 U.S.C. § 3729(a)(1) (internal footnote omitted).[1]

13.   For purposes of the False Claims Act, the terms "knowing" and

"knowingly":

> (A) mean that a person, with respect to information – (i) has actual
> knowledge of the information; (ii) acts in deliberate ignorance of the truth
> or falsity of the information; or (iii) acts in reckless disregard of the truth or
> falsity of the information; and
> (B) require no proof of specific intent to defraud[.]

31 U.S.C. § 3729(b)(1).

## V.   THE MEDICARE PROGRAM

14.   In 1965, Congress enacted Title XVIII of the Social Security Act, known as

the Medicare program, to pay for the health care services for certain individuals,

---

[1]The FCA was amended pursuant to Public Law 111-21, 123 Stat. 1617 (2009), the Fraud Enforcement and Recovery Act of 2009 ("FERA"), enacted May 20, 2009. Given the nature of the claims at issue in this case, section 3729(a)(1) of the prior statute, and section 3729(a)(1)(a) of the revised statute are both applicable here. Section 3729(a)(1) applies to conduct that occurred before FERA's enactment, and section 3729(a)(1)(A) applies to conduct after FERA's enactment.

generally those who are at least sixty-five years old or disabled.  HHS is the agency responsible for administering and supervising the Medicare program, which it does through CMS, an agency of HHS.

15.     Medicare beneficiaries have the option of participating in the Medicare Part B program, which provides supplementary medical insurance benefits, including, among other things, physician and outpatient services.  *See* 42 U.S.C. §§ 1395j, 1395k.

16.     To assist in the administration of Medicare Part B, CMS contracts with "carriers."  Carriers, typically insurance companies, are responsible for receiving, processing, adjudicating, and paying Part B claims.

17.     Effective January 2007, CMS began the transition of claims processing from carriers to Medicare Administrative Contractors ("MACs").  42 C.F.R. § 421.400. Like carriers, MACs generally act on behalf of CMS to process and pay Part B claims and perform administrative functions on a regional level.  *Id.*

18.     In Florida, First Coast Services Options, Inc. served as the carrier until September 2008, at which time it was awarded a contract to serve as the MAC for the Florida region.

19.     Any health care provider that wants to be paid by Medicare for physician and outpatient services has the option of participating in Medicare Part B by entering into an agreement with CMS to become what is called a participating supplier or participating physician.  To become a participating physician, Medicare requires that the physician apply and meet certain criteria.

20.     If approved to participate in Medicare, a participating physician then can claim reimbursement from the Medicare trust fund for medical services rendered to

Medicare beneficiaries, including office visits and outpatient services.

21.     To make a claim for payment under Medicare, participating physicians submit a form called a CMS Claim Form 1500, which can be submitted electronically.  If a participating physician chooses to submit claims electronically, he is required to sign an enrollment form agreeing, among other things, that he will be responsible for all Medicare claims submitted to CMS himself, or by his employees or agents.  By signing the enrollment form, the applicant agrees to submit claims that are accurate, complete, and truthful.

22.     CMS Claim Form 1500 requires, among other things, identification of the service provided, identification of the physician who provided the service, and a certification that the service was medically indicated and necessary for the health of the patient.

23.     To identify the services provided to Medicare beneficiaries, participating physicians use standardized numeric codes that are published annually by the American Medical Association in a manual called the *Current Procedural Terminology*, which lists the identifying codes, or "CPT codes," along with descriptions of the medical services that correspond with each code.

24.     Some medical services can be performed at varying levels of service, each of which corresponds with a different CPT code.  For example, Medicare pays for evaluation and management ("E/M") services, commonly called office visits, based on the level of care provided, which correlates with the severity of the condition, the intensity of the examination, and the complexity of medical decision making.  The greater the severity of the condition, level of examination, and level of medical decision

6

making, the higher the code and reimbursement.  CPT code 99211 is the lowest level of office visit for an established patient, and CPT code 99215 is the highest.  Medicare pays more for a visit that falls under 99215 than one that falls under 99211.

25.     The refilling and maintenance of implantable infusion pumps can be administered by either a non-physician, corresponding with CPT code 95990, or a physician, corresponding with CPT code 95991.  Medicare pays more if a physician administers the refill.

26.     On the same day that a patient receives a service such as the refilling of an infusion pump, that patient also may require a significant, separately identifiable E/M service above and beyond the other service.  A participating physician may claim reimbursement for the E/M service by identifying the CPT code for the E/M service along with another identifying code called modifier 25.  The E/M service still must meet all of the requirements of the corresponding CPT code.

## VI.     FALSE CLAIMS

### A.     False Claims for Upcoded Pain Pump Refills

27.     The Defendants' pain management practice involved the implantation of infusion pumps that delivered pain medication over extended periods of time.  Patients with infusion pumps returned on a regular basis for the refilling of their pumps, which typically were performed by a nurse.  The Defendants "upcoded" their claims for these refills.  That is, they routinely billed Medicare for the refills as if performed by a physician, when, in fact, they were performed by nurses.

7

**B.    False Claims for Evaluation and Management Services**

28.    Refilling an infusion pump requires about forty to forty-five minutes and was administered by a Sarasota Pain nurse.  Chun saw the patients only upon completion of the refills, and did not, during these brief encounters, conduct a significant, separately identifiable examination that justified the submission of a claim for evaluation and management.  Defendants nonetheless routinely billed Medicare for a high-level office visit, using CPT code 99214 or 99215, each time a patient visited the office for a pump refill, in some instances adding modifier 25.

29.    Defendants routinely billed Medicare for a high-level office visit for all of their patients, regardless of the purpose of the visit.  Thus, Defendants routinely submitted claims for services using CPT code 99214 or 99215, when, in fact, the services provided, if any, did not include a high-level office visit involving a detailed or comprehensive examination to address a condition of moderate to high severity.

**C.    False Claims for Injections Not Performed**

30.    Because pain relief from medication delivered through an infusion pump is not immediate, physicians may inject medication in a single dosage, separate from the medication supplied through a patient's infusion pump.  Defendants billed Medicare for injections that they did not in fact administer.

**D.    Examples of False Claims**

31.    Contemporaneously with the United States' Complaint in Intervention, the United States will serve on Defendants a list of claims presented to Medicare during the period from January 2006 through April 2010.   From this list, the United States derived

two random samples of claims and also will serve these lists on Defendants.  This

information includes, among other things, the dates of service, the services for which

payment was sought, the CPT codes corresponding with the services, the beneficiary

names, the amount of the claim, and the amount that was paid.  This claims data

contains confidential patient information and thus will not be filed in the public record

with this complaint.

      32.     However, listed below are examples of claims, with identifying information

removed, that Defendants presented and caused to be presented to the United States:

| Date of Service | Beneficiary | CPT Code | Description of Service |
|---|---|---|---|
| 5/22/2007 | M.T. | 95991 | Refilling and maintenance of implantable pump |
| 5/22/2007 | M.T. | 99215 | Evaluation and management |
| 10/23/2007 | W.M. | 95991 | Refilling and maintenance of implantable pump |
| 10/23/2007 | W.M. | 99215 | Evaluation and management |
| 10/23/2007 | W.M. | 62318 | Injection |
| 11/14/2007 | W.M. | 99215 | Evaluation and management |
| 12/13/2007 | D.H. | 95991 | Refilling and maintenance of implantable pump |
| 12/13/2007 | D.H. | 99215 | Evaluation and management |
| 12/13/2007 | D.H. | 62318 | Injection |
| 4/29/2008 | S.D. | 95991 | Refilling and maintenance of implantable pump |
| 4/29/2008 | S.D. | 99215 | Evaluation and management |
| 6/5/2008 | A.H. | 95991 | Refilling and maintenance of implantable pump |
| 6/5/2008 | A.H. | 99215 | Evaluation and management |

| Date of Service | Beneficiary | CPT Code | Description of Service |
|---|---|---|---|
| 6/5/2008 | A.H. | 62318 | Injection |
| 8/5/2008 | C.M. | 95991 | Refilling and maintenance of implantable pump |
| 8/5/2008 | C.M. | 99215 | Evaluation and management |
| 8/5/2008 | C.M. | 62318 | Injection |
| 10/24/2008 | F.C. | 99215 | Evaluation and management |
| 2/25/2009 | D.A. | 95991 | Refilling and maintenance of implantable pump |
| 2/25/2009 | D.A. | 99215 | Evaluation and management |
| 3/16/2009 | V.B. | 95991 | Refilling and maintenance of implantable pump |
| 3/16/2009 | V.B. | 99215 | Evaluation and management |
| 3/19/2009 | K.C. | 99215 | Evaluation and management |
| 7/28/2009 | G.A. | 95991 | Refilling and maintenance of implantable pump |
| 7/28/2009 | G.A. | 99215 | Evaluation and management |
| 9/10/2009 | L.A. | 99215 | Evaluation and management |
| 1/18/2010 | A.W. | 99215 | Evaluation and management |

## FIRST CAUSE OF ACTION
(False Claims Act: Presentation of False Claims)
(31 U.S.C. § 3729(a)(1) and (a)(1)(A))

33.     The United States realleges and incorporates by this reference all

preceding paragraphs of this complaint as if fully set forth herein.

34.     This is a claim for treble damages and civil penalties of $11,000 for each

violation of the False Claims Act, 31 U.S.C. §§ 3729-33, as amended.

35.     From in or about January 2006 through at least in or about January 2010,

through the acts described above, Defendants and their agents and employees

10

knowingly presented, and caused to be presented, false and fraudulent claims for

payment and approval to the United States, in violation of 31 U.S.C. § 3729(a)(1) and

(a)(1)(A).

36.    The claims for payment presented by the Defendants and their agents and

employees include, but are not limited to:

a.    claims for payment for refilling and maintenance of implantable

infusion pumps as if performed by a physician, when they were performed by a non-

physician;

b.    claims for payment for evaluation and management services that

were not rendered;

c.    claims for payment for evaluation and management services at a

higher level of service than actually rendered; and

d.    claims for payment for injections that were not in fact administered.

37.    Defendants presented, and caused to be presented, all of said false

claims with actual knowledge of their falsity, or with deliberate ignorance or reckless

disregard of the truth or falsity of the claims.

38.    Because of Defendants' conduct set forth in this count, the United States

suffered actual damages in an amount to be determined.

### SECOND CAUSE OF ACTION
(Payment by Mistake)

39.    The United States realleges and incorporates by this reference all

preceding paragraphs of this complaint as if fully set forth herein.

40.    This is a claim for the recovery of monies paid by the United States to

Defendants as a result of mistaken understandings of fact.

41.     The false claims that Defendants presented to the United States constituted misrepresentations of material facts in that they misrepresented whether a service was in fact provided to patients and misrepresented the level of service provided to patients.

42.     The United States, acting in reasonable reliance on the accuracy and truthfulness of the information contained in the claims, paid Defendants certain sums of money to which they were not entitled and are thus liable to account and pay such amounts, which are to be determined at trial, to the United States.

### THIRD CAUSE OF ACTION
(Unjust Enrichment)

43.     The United States realleges and incorporates by this reference all preceding paragraphs of this complaint as if fully set forth herein.

44.     This is a claim for the recovery of monies by which Defendants have been unjustly enriched.

45.     By obtaining government funds to which they were not entitled, Defendants were unjustly enriched, and are liable to account for and pay for such amounts, or the proceeds therefrom, which are to be determined at trial, to the United States.

### PRAYER FOR RELIEF

WHEREFORE, the United States demands and prays that judgment be entered in its favor against Defendants as follows:

I.     On the First Cause of Action under the False Claims Act, for the amount of the United States' damages, trebled as required by law, and such civil penalties as are authorized by law, together with all such further relief as may be just and proper.

12

II.     On the Second Cause of Action for payment by mistake, for the damages sustained and/or amounts by which Defendants were paid by mistake or by which Defendants retained illegally obtained monies, plus interest, costs, and expenses, and for all such further relief as may be just and proper.

III.    On the Third Cause of Action for unjust enrichment, for the damages sustained and/or amounts by which Defendants were unjustly enriched or by which Defendants retained illegally obtained monies, plus interest, costs, and expenses, and for all such further relief as may be just and proper.

## **DEMAND FOR JURY TRIAL**

The United States demands a jury trial in this case.

Respectfully submitted,

ROBERT E. O'NEILL
United States Attorney

BY:    */s/ Katherine M. Ho*
KATHERINE M. HO
Assistant United States Attorney
USA No. 070
501 W. Church Street, Suite 300
Orlando, FL  32805
Tel: (407) 648-7500
Fax: (407) 648-7643
Katherine.Ho@usdoj.gov

LACY R. HARWELL, JR.
Assistant United States Attorney
Florida Bar No. 714623
400 North Tampa Street, Suite 3200
Tampa, FL 33602
Tel: (813) 274-6000
Fax: (813) 274-6200
Randy.Harwell@usdoj.gov

**U.S. *ex rel.* Thomas v. Sarasota Pain**          **Case No. 8:11-cv-583-T-23TBM**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 1, 2012, I electronically filed the foregoing United States' Complaint in Intervention with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all registered CM/ECF users.

<u>*s/ Katherine M. Ho*</u>
Katherine M. Ho
Assistant United States Attorney